FILED
00 FEB 10 PM 4: 37
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| HERMAN V. CROPP, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CV 99-BU-0657-S |
| | ) |
| RAYTHEON ENGINEERS & CONSTRUCTORS, INC., | ) |
| | ) |
| Defendant. | ) |

ENTERED
FEB 10 2000

## Memorandum Opinion

This cause comes to be heard on a motion for summary judgment filed by Raytheon Engineers & Constructors, Inc. ("Raytheon"), on December 6, 1999. In that motion, Raytheon contends that no genuine issue of triable fact exists supporting the claims of the Plaintiff in this action, Herman V. Cropp ("Cropp"), that he was terminated on the basis of age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.* Cropp, in his responsive brief, contends to the contrary.

Summary judgment avails the parties of an invaluable opportunity to test the mettle of a case before it ever reaches trial. In evaluating a motion for summary judgment, the court assesses all of the proof the parties can bring to bear to ascertain the presence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 587 (1986). Under Federal Rule of Civil Procedure 56, the court's determination of the propriety of summary judgment is to be tempered by a strong inclination in favor of the non-movant. Therefore, only if the court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law is a grant of summary judgment appropriate. FED. R. CIV. P. 56(c). *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

It is the initial responsibility of the movant to inform this court of the grounds for its motion and to specifically identify those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The movant carries no meager burden, for it must illuminate for the district court, with reference to materials on file, the reasons why the non-movant cannot or does not raise a genuine issue of material fact sufficient to support a trial. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). *But see Gonzalez v. Lee County Housing Authority*, 161 F.3d 1290, 1294 (11th Cir. 1998) ("When the non-moving party bears the burden of proof on an issue at trial, the moving party need not 'support its motion with affidavits or other similar material negating the opponent's claim,' [*Celotex*] at 323 [], in order to discharge this initial responsibility. Instead, the moving party simply may '"show[ ]" — that is, point[ ] out to the district court — that there is an absence of evidence to support the nonmoving party's case.'").

Only after the moving party has satisfied this initial burden must the nonmoving party "make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Company*, 32 F.3d 520, 523 (11th Cir. 1994). At that point, Federal Rule of Civil Procedure 56(e) dictates that the nonmoving party "go beyond the pleadings" and by "affidavits, or by the 'depositions, answers to interrogatories, and admissions on file'

designate 'specific facts'" showing there exist genuine issues for trial. *Celotex*, 477 U.S. at 324; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). "If the non-moving party fails to 'make a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' then the court must enter summary judgment for the moving party." *Gonzalez v. Lee County Housing Authority*, 161 F.3d at 1294 (11th Cir. 1998). Bare speculation based on loose construal of the evidence will not satisfy the non-movant's burden. *See id.*

While the district court is permitted to consider the offered "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" in deciding whether to grant or deny a summary judgment motion, FED. R. CIV. P. 56(c), the non-movant bears the absolute responsibility of designating the specific facts in the record that support its claims. *See United States v. Four Parcels of Real Property in Greene and Tuscaloosa Counties in the State of Alabama*, 941 F.2d 1428, 1438 (11th Cir. 1991); *Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996). In other words, Federal Rule of Civil Procedure 56 "does not impose upon the district court a duty to survey the entire record in search of evidence to support a non-movant's opposition." *Id. See also Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment."), *cert. denied*, — U.S. —, 116 S.Ct. 74 (1995).

In resolving whether a given factual dispute requires submission to a jury, the court must inspect the presented evidence through the looking glass of each party's substantive evidentiary burden. *Anderson*, 477 U.S. at 254-55. Nonetheless, the court must abstain from examining the probity of conflicting evidence and from deciding issues of credibility. *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992). "It is not part of the court's function, when deciding a motion for summary judgment, to decide issues of

material fact, but rather decide whether such issues exist to be tried. The Court must avoid weighing conflicting evidence or making credibility determinations." *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 919 (11th Cir. 1993). Still though, "[t]he nonmoving party must provide more than a mere scintilla of evidence to survive a motion for judgment as a matter of law; 'there must be a substantial conflict in evidence to support a jury question.'" *Tidwell v. Carter Products*, 135 F.3d 1422, 1425 (11th Cir. 1998) (*citing Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir.1989)).

Facts[1]

Raytheon is a corporation headquartered in Cambridge, Massachusetts, selling engineering and construction services to clients in a variety of industries. In the city of Birmingham, Alabama, much of Raytheon's work is devoted to assisting in the design and building of pulp and paper mills. Within the engineering and design category of Raytheon's pulp and paper work, there are a variety of specialities. In the pulping process, an engineer can be familiar with the requirements of mechanical as well as chemical pulping methods. An engineer can focus on tissue or bleaching work. And while knowledge of one specialty does not require an engineer to be ignorant of another, knowledge of one speciality does not entail knowledge of another.

Cropp was employed at the Birmingham, Alabama, office of Raytheon as a Senior Consulting Engineer, pay grade nineteen.[2] During the relevant period of his employment,

---

[1] The facts recited herein may not be the facts borne out at trial. They are, rather, the facts as reasonably viewed in the light most favorable to Cropp.

[2] During his period of employment with Raytheon, Cropp suggested to a supervisor at one of Raytheon's client companies that the company hire a particular individual for a position with the client company. The supervisor stated that he would rather not and voiced his opposition on the grounds of the suggested employee's age.

Cropp's engineering expertise lay in the area of mechanical, rather than chemical, pulping. Although allegedly possessing some knowledge of the chemical pulping process through prior expertise,[3] Cropp admits that his knowledge had become somewhat dated. Further, he admits to relative inexperience with recent federal regulations governing and constraining the design and use of chemical pulping plants.[4] Cropp concedes a weakness in his knowledge of bleaching technology and a lack of tissue experience.

In late October of 1998, Raytheon made the decision to reduce its work force in order to boost competitiveness in its serviced industries. In the Birmingham office, twenty-five percent of the staff in pay grades seventeen and higher were to be eliminated from the company's payroll. A management committee, consisting of Rick Beiswenger ("Beiswenger"), the manager of human resources, Scott Baker ("Baker"), vice president of the chemical process product line, Ed Reynolds ("Reynolds"), vice president of engineering, and Ronnie Knight ("Knight"), vice president of the pulp and paper product line, was convened to determine who would be reduced from Raytheon's staff. Raytheon contends that Knight was responsible for commenting on the performance qualifications of Cropp, who worked on his staff in the pulp and paper area, relative to other persons potentially subject to the reduction in force.[5]

---

[3] Prior to starting work for Raytheon in 1979, Cropp's work was primarily in the area of chemical pulping.

[4] Most members of the relevant Raytheon staff were similarly hampered, however. Raytheon contends, though, that its management then believed (and still believes) that comprehension of the federal regulations regarding chemical pulping is bettered by an understanding of contemporary chemical pulping methods, around which those regulations were tailored.

[5] Cropp's response to this assertion is mixed. In his responsive statement of facts, Cropp denies, based upon assurances of Knight, that Knight played a part in the reduction decision, as it pertained to him. However, in the substantive factual assertions of his brief, Cropp seems to assert, by contrast, that Knight played a significant part in the termination decision, but never revealed his role directly to Cropp.

Three reasons were offered for placing Cropp into the lower quadrille of those potentially subject to the reduction in force. The first reason related to Cropp's expertise. According to Raytheon, an increasing portion of its business lay in the chemical pulp area. Cropp's knowledge of the area was, by admission, not up-to-date with the technology. The second reason related to Cropp's enthusiasm for his job. Cropp, in recent years, had taken several extended leaves of absence during hunting season and had volunteered to go on early retirement, although he later changed his mind. Finally, Cropp was involved in an incident where he had logged onto pornographic web sites from work and had been admonished by an individual from the security office of Raytheon in Philadelphia, Pennsylvania.[6]

On November 4, 1998, Cropp was informed that his employment with Raytheon would end on November 11, 1998. He filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on November 16, 1998, and received his notice of right to sue on February 26, 1999. On March 19, 1999, he filed the instant action.

## Contentions & Analysis

It is undisputed that Cropp does not allege the existence of any direct evidence of age discrimination. Thus, he must prove his case through circumstantial evidence, under the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Bogle v. Orange County Bd. of County Comm'rs*, 162 F.3d 653, 656 (11th Cir. 1998). Under this framework, an employee bears the initial burden of establishing a prima facie

---

[6] There is some dispute as to the number of times that Cropp accessed inappropriate web sites from his computer and who informed him to stop, so the Court adopts Cropp's rendition of the facts.

case of discrimination. *McDonnell Douglas*, 411 U.S. at 802; *Eskra v. Provident Life and Acc. Ins. Co.*, 125 F.3d 1406, 1411 (11th Cir. 1997). If the employee meets that burden, then a presumption arises that the challenged action by the employer was motivated by a discriminatory intent. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981); *Jones v. Gerwens*, 874 F.2d 1534, 1538 (11th Cir. 1989). The burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for its employment action. *Burdine*, 450 U.S. at 254-55. If the employer successfully articulates such a reason, then the burden shifts back to the employee to show that the proffered reason is a pretext for unlawful discrimination. *Id.* at 255-56.

In the present case, the Court will assume that Cropp has put forward a viable *prima facie* case and focus upon whether Raytheon has offered legitimate, non-discriminatory reasons for the termination and whether Cropp has presented sufficient evidence to demonstrate that Raytheon's reasons for selecting him for the reduction in force are pretextual. In a circumstantial evidence case, after a plaintiff has demonstrated a *prima facie* case of discrimination, the burden shifts to the employer to offer legitimate, nondiscriminatory reasons for the employment action. *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1331 (11th Cir. 1998), *citing McDonnell Douglas*, 411 U.S. at 802-04. This intermediate burden, which has been referred to as "exceedingly light," *Holifield v. Reno*, 115 F.3d 1555, 1564 (11th Cir. 1997)(citation omitted), is one of mere production, not persuasion. The employer need only produce evidence that could allow a rational fact finder to conclude, in this case, that the decision to terminate Cropp in a reduction in force was not made for an unlawful discriminatory reason. *Standard*, 161 F.3d at 1331, citing *Combs v. Plantation Patterns*, 106 F.3d at 1528. However, the employer may not satisfy its burden by presenting a hypothetical reason for the employment decision in question; instead it must present evidence sufficient to raise a genuine issue of fact as to whether it discriminated against the employee by making that decision. *See Combs*, 106

F.3d at 1528.

The employer has met this burden of production. Raytheon has offered three reasons that it states motivated the employment decision in the instant action. First, it contends that relative to other candidates, Cropp's expertise in mechanical pulping was not compatible with the current market and, to the degree that his expertise in chemical pulping was compatible, Cropp's knowledge was dated. Second, Raytheon asserts that Cropp had, of recent, shown a lessening commitment to his job with Raytheon. Raytheon avers, last, that Cropp accessed pornographic internet sites from his work and had only ceased to do so after receiving a reprimand.

Once the employer carries its burden under the second stage of the analysis by articulating legitimate, nondiscriminatory reasons for the employment action, it has rebutted the employee's prima facie case, the initial presumption of intentional discrimination drops from the case, and the *McDonnell Douglas* framework requires the employee to demonstrate that the stated reasons for the employment action were pretextual. *Bogle v. Orange County Bd. of County Com'rs*, 162 F.3d 653, 658 (11th Cir. 1998) (citations omitted). The employee may succeed in discrediting the defendant's proffered reasons "'either directly by persuading the trier of fact that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Combs*, 106 F.3d at 1528, quoting *Burdine*, 450 U.S. at 256. Cropp asserts as examples of direct evidence of a discriminatory animus a statement by a supervisor of a client of Raytheon that he would not hire another employee because of his age; a decision to terminate only upper-level management, who were generally older; and a factually unsupported feeling by Cropp that Knight, who was involved in the reduction in force decision, thought of age as a negative factor. None of these "facts" cast a shadow on the motivations of the decisionmakers at Raytheon who decided to rank Cropp in the bottom quadrille of employees to be retained. First, the

statement of the client, although perhaps direct evidence of discrimination by that client, cannot be attributed to Raytheon, the relevant employees of which played no role in the employment decision. Second, a decision to cut positions only at certain higher levels of management, in which older employees are more highly represented due to the experience generally required to obtain such positions, is not, in and of itself, sufficient to raise an inference that the targeting of job cuts was based upon age. *See Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611 (1993) ("Because age and years of service are analytically distinct, an employer can take account of one while ignoring the other, and thus it is incorrect to say that a decision based on years of service is necessarily 'age based.'"). Finally, Cropp's assertion regarding a belief that Knight had a discriminatory animus toward him is unsupported by any testimony of Cropp regarding statements or actions toward Cropp by Knight that would provide personal knowledge of such a bias.

As such, Cropp must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find [all of those reasons] unworthy of credence." *Watkins v. Sverdrup Technology, Inc.*, 153 F.3d 1308, 1314 (11th Cir. 1998)(citation omitted). The same evidence that is used to establish the *prima facie* case may also cast sufficient doubt on the employer's proffered legitimate, nondiscriminatory basis for its decision. *See Walker v. Mortham*, 158 F.3d 1177, 1185 n.12 (11th Cir. 1998).[7] However, the employee must present concrete evidence in the form of specific facts which show that the employer's proffered reason is mere pretext, and mere conclusory allegations and assertions by the employee will not suffice to survive a motion for summary judgment. *Earley v. Champion Intern. Corp.*, 907 F.2d 1077, 1081 (11th Cir.

---

[7]Such would seem to be true in a case such as the instant one, where the main issues of dispute at both the prima facie and pretext stages center around the job qualifications of the plaintiff.

1990) (citations omitted).

Even assuming that Cropp has proven pretext with regard to his comparative marketability,[8] Cropp fails to demonstrate pretext with respect to Raytheon's concerns about his commitment to the company and to its concerns with Cropp's access of unauthorized internet sites. In response to Raytheon's reason for lower ranking that Cropp failed to show a continued commitment to his work at Raytheon, Cropp has asserted, after the fact, that he would like to return to full-time work for the company, if such was available, and that he is still searching for a job in his area of expertise. However, this does not give rise to a genuine issue of triable fact that Raytheon's perception that Cropp lacked dedication to his job was knowingly in error at the time of the employee ranking.

Replying to Raytheon's concerns about his accessing pornographic internet sites from work, Cropp avers that such a reason for his low ranking is pretextual because the parties disagree about the number of times he accessed such sites and about who informed him that he stop accessing those sites. The fact remains, however, that he did access those sites and received a reprimand for it. It is this that forms the reason for the lowered ranking, not the matters that are in dispute. Cropp has failed to raise a genuine issue of triable fact that Raytheon's concern about his accessing inappropriate web sites was pretextual. As such, Cropp has failed to raise a genuine issue of triable fact as to his claim of discrimination in violation of the ADEA and Raytheon's motion for summary judgment is due to be GRANTED.

---

[8] However, it is likely that Cropp fails to demonstrate pretext even here. First, his argument that he was, in fact, marketable relates to high evaluations and good recommendations by his superior regarding mechanical pulping, his expertise in the field. However, Cropp does not appear to rebut the assertion that his area of expertise had ceased to be as marketable for Raytheon as it once was. Nonetheless, the Court will not ground its decision on the failure of Cropp to demonstrate pretext with respect to this proffered legitimate non-discriminatory reason.

## Conclusion

For the foregoing reasons, the motion of the Defendant, Raytheon Engineers & Constructors, Inc., will be GRANTED. This action will be DISMISSED, with prejudice.

DONE and ORDERED this 10th day of February, 2000.

H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE